```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       FORT WORTH DIVISION

GERALD W. HANNAH,               §
(Fed. Reg. No. 52754-065)       §
VS.                             §   CIVIL ACTION NO.4:04-CV-643-Y
                                §
                                §
UNITED STATES OF AMERICA,et al. §
```

MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
           (With special instructions to the clerk of Court)

Now pending before the Court is the November 30, 2005, motion for summary judgment of the remaining defendant[1] United States of America. The motion was accompanied by a separately filed brief in support. Pro-se inmate plaintiff Gerald W. Hannah filed a response to the motion (entitled "reply"), along with several attachments. The United States then filed a reply to the response, accompanied by an appendix. On January 23, 2006, Hannah filed a motion to submit a supplement to his response to the motion for summary judgment, with a proposed pleading that had attached thereto Bureau of Prisons medical and pharmaceutical records regarding him. As the United States did not respond to this motion or object to Hannah's filing of a supplemental response, the Court concludes that Hannah's motion to supplement must be granted, such that the clerk of Court will be  directed to file the five-page pleading and "Exhibit H" attached thereto as a supplement to the response to the motion for summary judgment. For the reasons set forth in the

---

[1] By order and Federal Rule of Civil Procedure 54(b) judgment filed December 10, 2004, the Court dismissed with prejudice all other defendants under the authority of 28 U.S.C. § 1915A(b)(1) and 28 U.S.C. § 1915(e)(2)(B).

motion for summary judgment, and for the reasons set forth below, the Court concludes the motion for summary judgment of the United States must be granted, such that plaintiff Hannah take nothing on his remaining claims.

*Summary-Judgment Evidence*

As a result of a prior order, Hannah's pleadings consist of: a six-page form civil complaint filed September 7, 2004; a 22-page (plus attachments and exhibits) more definite statement also filed September 7, 2004; and an 11-page supplemental complaint filed October 4, 2004.[2] Because Hannah expressly declared that his form complaint and his more definite statement were true and correct under penalty of perjury, this Court is required to consider these documents as competent summary-judgment evidence.[3] To his response to the summary-judgment motion, Hannah submitted numerous attachments including: court decisions; copies of letters; articles and information printed off the internet regarding Methicillin-Resistant Staphylococcus Aureus (MRSA); copies of numerous grievance forms submitted to the BOP by Hannah; the October 20, 2003 declaration of inmate Bobby Zidell; the December 15, 2003, declaration of Hannah; the October 21, 2005, declaration of Hannah; the October 19, 2003, declaration of inmate Gregory Campbell; the

---

[2]December 10, 2004, Order of Partial Dismissal, n.2 [docket no. 7].

[3]*See Nissho-Iwai American Corp. v. Kline,* 845 F.2d 1300, 1306 (5th Cir. 1989). Hannah did not make such a declaration in his supplemental complaint. Accordingly that document is not considered as evidence.

October 17, 2003, declaration of inmate Henry Trojack; a Bureau of Prisons' mission statement; and copies of discovery. Also, attached to his supplemental response, Hannah provided numerous copies of medical and prescription medicine records of the BOP regarding him. Because no objections have been raised to these submissions, the evidence included therein is properly before the court.[4]

*Summary-Judgment Standard*

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5] The party moving for summary judgment has the initial burden of informing the Court of the basis for the motion and producing evidence that tends to show that no genuine issue as to any material fact exists and that the party is entitled to judgment as a matter of law.[6] Once the moving party has made such a showing, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial.[7] Determining whether an

---

[4] Although these documents are not presented as certified copies or otherwise authenticated sufficiently to be considered as sufficient summary-judgment evidence over objection, Defendant has not objected to or contested them. Thus, for the purposes of this motion, the Court will consider them.

[5] FED. R. CIV. P. 56(c).

[6] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).

[7] *Id.*, at 322-23; *Anderson,* 477 U.S. at 257.

issue is "genuine" requires deciding whether it is "real and substantial, as opposed to merely formal, pretended, or a sham."[8] A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law.[9] No genuine issue of material fact exists if no rational trier of fact could find for the nonmoving party based on the evidence presented.[10] The Court must consider all evidence in the light most favorable to the nonmoving party.[11]

*Hannah's Claims*

Remaining before this Court is plaintiff Hannah's claim for recovery against the United States under the Federal Tort Claims Act (FTCA) for the alleged negligence of doctors and other officials at FCI--Sheridan and at FMC--Fort Worth, in the adequacy of medical care provided to him for the MRSA infection.[12] Hannah alleges that as a result of the failure to properly and timely treat his MRSA infection, he has suffered ongoing flu-like symptoms

---

[8] *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir. 2001)(noting that only genuine and substantial issues may subject a defendant to the burden of trial)(quoting *Wilkinson v. Powell,* 149 F.2d 335, 337 (5th Cir. 1945).

[9] *See Anderson,* 477 U.S. at 248.

[10] *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 712-13 (5th Cir. 1994).

[11] *See Id.* at 713.

[12] Although Hannah has submitted documents in this action purporting to include allegations that he has been subjected to "retaliation" at his current institution, FMC--Butner, and of complaints regarding the ongoing treatment he has received at that institution, those claims are not stated in the pleadings before this Court.

including severe headaches, joint pain, lack of energy, severe eye pain, hearing loss, waves of sickness, and he alleges that because the infection was never resolved, he was never authorized for neck surgery that was otherwise approved due to fear of the infection spreading into his bones. (December 15, 2003, Declaration at 2-3; October 21, 2005, Declaration at 2-3.)

*Facts*

Assuming the facts in the light most favorable to and as alleged by Hannah, he was first diagnosed with MRSA in his sinuses in June 2002, and treated by Dr. Topping, an Ear, Nose and Throat (ENT) specialist in the area near FCI--Sheridan. From June 2002 through December 2002, Hannah had several sinus debridement procedures and he was provided the oral antibiotic sulfameth/trimeth. Although Hannah was told in January 2003 that he was to be transferred to a medical facility to begin IV antibiotic treatment for the MRSA, he was not transferred to FMC--Fort Worth until March 2003. Upon arrival at FMC--Fort Worth, Hannah was told by Dr. Barry that he would continue the sulfameth/trimeth, and that before IV antibiotic treatment would begin, Hannah would need to have a CAT scan, see another ENT, have additional debridement surgery, and then possibly see an infectious disease specialist. That course was then followed: in May 2003, a CAT scan revealed the MRSA had spread; on August 25, 2003, ENT Phillips performed surgery; on September 5, 2003, ENT Phillips

5

informed Hannah on a follow-up appointment that the surgery had not succeeded, that the MRSA had spread throughout all of his sinus canals, and Dr. Phillips recommended a stronger antibiotic provided through a nebulizer as soon as possible; on October 27, 2003, infectious disease specialist, Dr. Barbara Atkinson, saw Hannah and she recommended treatment with vancomycin through an IV; the IV antibiotic was started on November 20, 2003. On December 30, 2003, the IV treatment was discontinued. Dr. Barry then took Hannah off antibiotics. (More Definite Statement (MDS) at 7-9.) In his December 2003 declaration, Hannah alleged that several of his physicians had told him, even though it was not written in any of his records, that he needed to be provided treatment through an antibiotic breathing machine. (December 15, 2003, Hannah Decl. at 1-2.) On January 29, 2004, another CAT scan showed the MRSA infection still worse than before. On February 25, 2004, Hannah again had surgery, and the MRSA infection was still present. On March 8, 2004, Hannah again saw Dr. Atkinson, who diagnosed that the MRSA was worse and that Hannah had pseudomonas bacterium as well, and she recommended a nebulizer. Dr. Barry informed Hannah that permission had to be obtained from Washington, D.C., before the recommended treatment could be followed. On March 16, 2004, Hannah was placed on several antibiotics consisting of: Linezolid, Rifampin, Tobramycin (through a nebulizer) and myacin cream. This treatment was continued until April 25, 2004. On May 22, 2004,

6

another CAT scan was done. On May 24, 2004, Dr. Atkinson reviewed the CAT scan and recommended cultures be taken. On June 4, 2004, Hannah saw ENT Phillips, who scheduled another debridement. On July 14, 2004, Phillips performed the debridement and took cultures. Again on July 21, 2004, Phillips performed another debridement and informed Hannah that about 70% of the infection was gone, but that the cultures revealed that the MRSA was still present. (MDS at 9-11.) In his October 2005, declaration, Hannah reports that doctors at FMC--Butner have told him that prior procedures by contract physicians resulting in the removal of his turbinates (membranes on the wall of the nasal chamber) may have contributed to the ongoing presence of MRSA, and that he may have MRSA in his sinuses for the rest of his life. (October 21, 2005, Hannah Decl. at 3.)

*Analysis*

The United States is immune from suit unless it consents to be sued, and the terms of such consent, or waiver of its sovereign immunity, "define [the] Court's jurisdiction to entertain the suit."[13] The Federal Tort Claims Act (FTCA) constitutes a waiver of sovereign immunity.[14] The FTCA authorizes civil actions for damages against the United States for personal injury caused by the negligence of government employees when private individuals would be liable under the substantive law of the state in which the

---

[13] *United States v. Testan,* 424 U.S. 392, 399 (1976).

[14] *See* 28 U.S.C.A. § 1346(b)(West Supp. 2006).

7

negligent acts occurred.[15] In this case the Court applies Texas law. Texas law authorizes suits for medical malpractice when the plaintiff can prove: (1) a duty by the physician or hospital to act according to an applicable standard of care, (2) a breach of that standard of care, (3) an injury, and (4) a causal connection between the breach of care and the injury.[16] The standard of care is a threshold issue which the Plaintiff must establish before turning to whether the defendant breached such standard.[17]

Generally, expert testimony is required to prove the applicable standard of care.[18] Such testimony must set forth the standard of care in the community in which the treatment took place or in similar communities.[19] The burden is on the plaintiff to establish that the defendant provided a mode of treatment "which a reasonable and prudent member of the medical profession would not have undertaken under the same or similar circumstances."[20] Unless the form of treatment is a matter of common knowledge, or is within

---

[15]*Id*; 28 U.S.C.A. § 2674 (West 1994); *see also Quijano v. United States,* 325 F.3d 564, 567 (5th Cir.2003).

[16]*Quijano,* 325 F.3d at 567, *citing Mills v. Angel*, 995 S.W.2d 262, 267 (Tex. App.-Texarkana 1999,no pet.); *Denton Reg. Med. Ctr. V. LaCroix,* 947 S.W. 2d 941, 950 (Tex.App.-Fort Worth 1997, no pet.)

[17]*Quijano,* 325 F.3d at 567 (citations omitted).

[18]*Id, citing Hood v. Phillips,* 554 S.W. 2d 160, 165-66 (Tex. 1977); *Bowles v. Bourdon,* 148 Tex. 1. 219 S.W.2d 779, 782 (1949).

[19]*Quijnao,* 325 F.3d at 568, *citing Birchfield v. Texarkana Mem'l Hop.*, 747 S.W.2d 361, 366 (Tex. 1987); *Hall v. Huff,* 957 S.W. 2d 90, 101 (Tex.App.-Texarkana 1997, pet. den'd).

[20]*Hood,* 554 S.W.2d at 165.

the experience of a layman, expert testimony is required.[21]

The problem for Hannah is that he has failed to designate an expert and provide information from such expert regarding the standard of care. The record evidence and declarations provided by Hannah himself show that he was seen, evaluated, and treated for the MRSA by numerous different medical personnel, including ear, nose, and throat specialists, and an infectious-disease specialist. What the appropriate standard of care is, and whether the different treatment regimes prescribed and attempted on Hannah's behalf over the period he was at FCI-Sheridan and FMC-Fort Worth, comported with that standard of care, is not a matter of common knowledge, nor is it within the experience of a layman. Under applicable Texas law, expert testimony is required for Hannah to meet his burden of proof. As he has failed to provide expert testimony, he cannot create a material fact issue on the standard of care, and the motion for summary judgment thus must be granted.

Hannah, of course, proceeds pro-se and in-forma-pauperis under 28 U.S.C. § 1915, et seq. in this action. In his response to the motion, Hannah argues that the Court should appoint an expert to testify on his behalf. The Court already denied an earlier motion by Hannah for appointment of an expert during the discovery phase. The United States Court of Appeals for the Fifth Circuit has determined that the "plain language of section 1915 does not

---

[21]*Id.* at 165-66.

provide for the appointment of expert witnesses to aid an indigent litigant."[22] In *Pedraza v. Jones,* the court of appeals noted that it could not fault the trial court for not exercising a power it did not possess in refusing to appoint an expert witness to help a pro se inmate create a fact issue to contest defendants summary judgment motion.[23] Under this controlling precedent, Hannah is not entitled to court appointment of an expert under 28 U.S.C. § 1915.

Hannah argues that Federal Rule of Evidence 706(a) authorizes the Court to provide an expert for him. That rule provides:

> The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the court or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

---

[22]*Pedraza v. Jones,* 71 F.3d 194, 196 (5th Cir. 1995); *see generally Brown v. Carr,* 236 F.R.D. 311 (S.D. Tex. May 22, 2006)("Plaintiff may not expect the Court or defendants to pay for these fees and expenses simply because he is an indigent inmate proceeding pro se in this action.")

[23]*Pedraza,* 71 F.3d at 196-97; *see also Aguilar v. Garcia,* No. 98-40427, 166 F.3d 341 (5th Cir. 1998)(recognizing that district court was not authorized to pay expert witness fees for appointment of a psychiatric expert)(unpublished); *Walton v. Yates,* Civ. A. No.3:94-CV-2007-D, 1996 WL 734953, at *1 (N.D.Tex. Dec. 10, 1996) (recognizing that Fifth Circuit has declined to hold that prison inmates were entitled to court appointed expert witnesses).

The determination to appoint an expert under Rule 706 rests solely in the Court's discretion and is to be "informed by such factors as the complexity of the matters to be determined and the fact-finder's need for a neutral, expert view."[24] But here, Hannah does not wish the Court to provide a neutral expert, rather, he seeks to have the Court appoint an expert to help him prove the elements of his case. But "litigant assistance is not the purpose of Rule 706."[25] This Court finds instructive another district court's rejection of a pro se party's request for appointment of an expert in a legal malpractice case:

> The plaintiff's failure to secure an expert witness, after being given repeated opportunities by the Court to find such a witness, demonstrates that the plaintiff is unable to prove his case. Moreover, the Court finds that the plaintiff's circumstances are not so "compelling" as to require the Court to appoint an expert on the plaintiff's behalf. *See Ledford[v. Sullivan]*, 105 F.3d 354, 358-59 (7th Cir. 1991). Indeed, the appointment of an expert witness for the plaintiff in this case under Rule 706 would be tantamount to the Court assisting the plaintiff in proving his case against the defendants. Rule 706 was not designed to provide such relief to a litigant.[26]

Rule 706 is not applicable to Hannah's request for appointment of an expert to support his claim of medical malpractice.

---

[24]*Tangwall v. Robb,* No.01-10008-BC, 2003 WL 23142190, at *3 (E.D. Mich. Dec. 23, 2003)(citations omitted).

[25]*Daker and Kennedy, v. Wetherington, et al.,* No.1:01-CV-3257-RWS, 2006 WL 648765, at *5 (N.D.Ga. March 15, 2006); *see Pedraza,* 71 F.3d at 197 n.5 (rejecting inmate plaintiff's request for appointment under rule 706 when that appointment was only for his own benefit).

[26]*Tangwall v. Robb,* 2003 WL 23142190 at *4.

Hannah also argues that he should be entitled to meet his obligation to provide expert testimony by relying upon the, as yet, not obtained testimony of treating physicians Dr. Randall Phillips and Dr. Barbara Atkinson. But for the same reasons noted above, Hannah has not shown how he could pay the costs associated with providing the witness fees necessary to obtain these persons' presence at trial.[27] Furthermore, even assuming Hannah were able to obtain the voluntary agreement of these persons to testify in this matter, although they might not be subject to the production-of-report requirement of Federal Rule of Civil Procedure 26(a)(2)(B), their testimony would be limited to any opinions stated in their office records.[28] Thus, to have these treating physicians review the medical records and provide expert opinion about the standard of care, Hannah would have had to comply with the expert report requirement of Rule 26 and this Court's scheduling order. Since Hannah did not do so, these treating physicians may not provide expert testimony on Hannah's behalf.

Outside of these many efforts by Hannah to obtain expert testimony on the standard of care, or to deem testimony he hopes to

---

[27]*See Pedraza,* 71 F.3d at 196 n.4 ("The circuit courts that have addressed the issue of court payment for *non-expert* witness fees, such as attendance and mileage, have consistently held that federal courts are not authorized to waive or pay witness fees on behalf of an IFP litigant");     *see also Walton,* 1996 WL 734953, at *1 (since plaintiff had not tendered witness fees or mileage fees for person to be subpoenaed, he was not entitled to have them served.)

[28]*See Mitchell v. City of Gulfport,* No.CIV. A. 101CV449LGRHW, 2005 WL 3116071, at *2 (S.D.Miss. November 18, 2005),*citing Hamburger v. State Farm Mutual Auto. Ins. Co.,* 361 F.3d 875, 883 (5th Cir. 2004) for the proposition that if physician's proposed opinion testimony extends beyond care or treatment, then the physician must submit an expert report.

12

obtain as sufficient to establish a standard or care, Hannah argues alternatively that 18 U.S.C. § 4042 sufficiently defines the requisite duty of care applicable to resolve his medical-negligence claims. Section 4042 imposes on the United States of America, through the Bureau of Prisons, the duties to "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons convicted of offenses against the United States" and to "provide for the protection . . . of all persons . . . convicted" of such offenses.[29] In *United States v. Muniz*,[30] the Supreme Court noted that the "duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, absent an inconsistent state rule."[31]

---

[29] 18 U.S.C.A. § 4042(a)(2) and (3)(West 2000).

[30] 374 U.S. 150 (1963).

[31] *Id.* at 164-65. The Court, in *Muniz,* considered and resolved the question of whether federal prison inmates could bring negligence suits against the United States under the FTCA at all. *Muniz,* 374 U.S at 150.
Noting that the FTCA defines the liability of the United States to be in the same manner and to the same extent as a private individual under like circumstances, and does not exclude from its waiver suits by prisoners even though express exceptions are provided for claims arising from other government activity, the Court concluded that Congress had consented to such prisoner suits: "whether a claim could be made out would depend upon whether a private individual under like circumstances would be liable under state law, but prisoners are at least not prohibited from suing." *Id.* The Court considered, and rejected, the government's claim that having to rely upon the law of different states would disrupt the operation of the federal prison system:

> Without more definite indication of the risks of harm from diversity, we conclude that the prison system will not be disrupted by the application of Connecticut law in one case and Indiana law in another to decide whether the Government should be liable to a prisoner for the negligence of its employees.

Having thus found that appropriate state negligence law would be applied to prisoners' claims, the Court, nevertheless, added the statement about "duty of care owed by the Bureau of Prisons to federal prisoners [being] fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." *Id.* at 164-65.

13

Plaintiff Hannah's contention that 18 U.S.C. § 4042 itself creates a duty of care sufficient to support liability in a medical malpractice case is misplaced. This Court's research has revealed no analysis to support such a claim.[32] Furthermore, within the *Muniz* decision itself, the Court, in rejecting the government's claim that it would be subjected to too many varying liability standards, stated "[e]ven a matter such as improper medical treatment can be judged under the varying state laws of malpractice . . . ."[33] Further, this Court finds helpful the analysis of the Supreme Court's reference to § 4042 in the *Muniz* opinion in a decision by the United States Court of Appeals for the Ninth Circuit:

> We believe that this statement [regarding duty fixed by § 4042] should be read as finding a duty inhering in the nature of the custodial relationship, which is established in part by the federal statute and in part by the activity itself. Under this interpretation, the duty stems from state tort law rather than directly from the statute. This reading alone can reconcile the statement with the Court's earlier recognition that "(w)hether a claim could be made out would depend upon whether a private individual under like circumstances would be liable under state law."[34]

---

[32]*Cf. Muhammed v. United States*, 6 F.Supp. 2d 582 (N.D.Tex. 1998) (court that held 18 U.S.C. § 4042 creates, for tort liability purposes, a duty for the BOP to exercise ordinary or reasonable care in doing the things that section obligates it to do, however, granted summary judgment as to the inmate's *medical malpractice* claim, because the inmate had failed to provide an expert medical opinion to establish any negligent act or omission by a treating physician).

[33]*Muniz*, 374 U.S. at 161.

[34]*United Scottish Ins. Co., v. United States*, 614 F.2d 188, 198 n. 9 (9th Cir. 1979), *citing Muniz*, at 153 and at 165 n.27.

Also instructive is *Brown v. United States of America,*[35] where the district court confronted a federal inmate's claim, similar to Hannah's, that he was not required to supply expert testimony to establish a medical negligence case because § 4042's "failure to provide care" language defined the appropriate standard of care. After reviewing § 4042 and *Muniz,* the court held that "[a]lthough 18 U.S.C. § 4042 establishes a federal duty of care, I must still look to state law to determine whether that duty was breached . . . [r]egardless how the claim is characterized, plaintiff is still required to support his claim with expert testimony."[36] Likewise here, the standards enunciated in 18 U.S.C. § 4042 do not set forth the standard of care for a particular medical negligence claim, and Hannah cannot rely upon that statute to avoid the obligation to provide expert testimony to meet his burden.

For all of the above and foregoing reasons, the November 30, 2005, motion for summary judgment of defendant United States [docket no. 40] is GRANTED.

Plaintiff Hannah's January 23, 2006, motion for leave to file supplemental response [docket no. 50] is GRANTED, such that the clerk of Court is directed to file the five-page pleading with

---

[35]*Brown v. U.S.,* No.99-C-0400-C, 2000 WL 34235983 (W.D. Wis. Aug. 18, 2000), *aff'd,* 74 Fed.Appx. 611 (7th Cir. 2003), *cert. den'd,* 540 U.S. 1132 (2004).

[36]*Id,* 2000 WL 34235983 at *3; *see also Flechsig v. United States*, 991 F.2d 300, 303-04 (6th Cir.1993)("This duty of care is set by section 4042. In order to determine liability, the elements of state tort law must be applied.")

15

attachments thereto as a supplement to the response to the motion for summary judgment, *nunc pro tunc* as of January 23, 2006.

Plaintiff Hannah take nothing on his remaining claims against defendant United States of America and such claims are DISMISSED WITH PREJUDICE.

SIGNED September 1, 2006.


_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

16